1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEFFREY SHOPE,

       Plaintiff,

    v.

CITY OF LYNNWOOD, *et al.*,

       Defendants.

Case No.  C10-0256RSL

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

This matter comes before the Court on a motion for summary judgment filed by defendants City of Lynnwood (the "City") and City Police Detectives Greg Jamison and Anne Miles.  Plaintiff contends, among other things, that Detective Miles unlawfully arrested him at his home without probable cause.[1]

For the reasons set forth below, the Court grants defendants' motion.

## II.  DISCUSSION

**A.    Plaintiff's Request for a Continuance.**

_____

[1] Because this matter can be decided based on the parties' memoranda, attachments, and the balance of the record, defendants' request for oral argument is denied.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 1

As an initial matter, plaintiff has filed a motion "continuing the hearing in order to allow Plaintiff his full opportunity to review the deposition transcript and make any changes." Motion at p. 1. Federal Rule of Civil Procedure 30(e) permits a deponent thirty days to review the deposition transcript and make any changes after being notified that the transcript is completed. In this case, the court reporter notified plaintiff via e-mail on February 1, 2011 that the transcript was completed. Declaration of Gary Preble, (Dkt. #31). Although plaintiff's counsel states that he did not actually review the e-mail on that day, counsel's inattention does not justify a continuance. Id. ("I receive many emails per day and the email that gave notice of the transcript to my office was overlooked."). Furthermore, because plaintiff has already had his full thirty days to review the transcript, no extension is necessary. To the extent that plaintiff contends he needs additional time to submit changes to the Court, he has already done so: as set forth below, he now seeks to alter his deposition testimony. For all of those reasons, plaintiff's motion for an extension of time is denied.

**B.  Background Facts.**

During an interview with Child Protective Services social worker Carol Shaw, plaintiff's step-son, fourteen year-old C.D.,[2] reported that plaintiff recently became angry with him and punched him in the eye. Declaration of Greg Jamison, (Dkt. #20) ("Jamison Decl."), Exs. B, C. Shaw observed and photographed a bruise on C.D.'s eyelid. C.D. also reported that plaintiff yells, screams, and hits him. Id. Shaw faxed a copy of her report to the Lynnwood Police Department. Id. at ¶ 3. Detective Jamison was assigned to investigate, and he had been trained

---

[2] During his interviews with Ms. Shaw and Detective Jamison, C.D. was at the Denny Youth Center in Everett, Washington based on events unrelated to this lawsuit.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 2

in interviewing victims, witnesses, and suspects, and in conducting domestic violence investigations.  Id. at ¶ 4.  As part of his investigation, Detective Jamison interviewed C.D., who told him the same version of events as he had related to Ms. Shaw.  Based on the information he had learned, Detective Jamison concluded that there was probable cause to arrest plaintiff for Assault IV under RCW 9A.36.041.  Id. at ¶ 5 ("Ms. Shaw witnessed the bruising over C.D.'s eye.  Her independent recollection of events, combined with the statements in her CPS referral and C.D.'s verbal and written statements led me to conclude that I had reasonably trustworthy information that, at a minimum, plaintiff had intentionally struck C.D. in the face.").

On December 14, 2007, Detective Jamison called plaintiff and left a message requesting a return call.  When plaintiff called back, Detective Jamison asked him to come to the Lynnwood Police Department to speak with him.  Plaintiff agreed to come in after speaking with his attorney.  Declaration of Jeffrey Shope, (Dkt. #29) ("Shope Decl.") at p. 1.  "Based on the tone of his voice and the tenor of [the] conversation," Detective Jamison concluded that plaintiff would not come voluntarily to the police station.  Jamison Decl. at ¶ 6.  He therefore asked Detective Miles to take plaintiff into custody and bring him to the police station.  Declaration of Anne Miles, (Dkt. #21) ("Miles Decl.") at ¶ 4.  Detective Miles drove her marked patrol car, which was equipped with lights and sirens, to plaintiff's residence and parked in front of the house.  Id.  After plaintiff answered the door and verified his identity, Detective Miles informed him that he was under arrest and that he needed to accompany her to the police station.  According to plaintiff's version of events, at the time Detective Miles arrested him, he was "standing in the door," approximately one foot from the threshold.  Plaintiff's Dep. at pp. 87, 93.  Detective Miles was standing outside the door and did not enter the residence.  Plaintiff testified

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 3

during his deposition that Detective Miles "grabbed [his] left hand" and pulled him out of the door. Id. at p. 91. After Detective Miles transported plaintiff to the Lynnwood police station, Detective Jamison interviewed him. Plaintiff denied striking his step-son. Detective Jamison cited plaintiff for Assault IV, Domestic Violence, and released him on his own recognizance.

On December 17, 2007, plaintiff appeared before Judge Stephen Moore in Lynnwood Municipal Court. The court found probable cause to charge plaintiff with assault in the fourth degree. Declaration of Thomas Miller, (Dkt. #23) ("Miller Decl."), Ex. C. The court also appointed a public defender to represent plaintiff. The prosecutor subsequently voluntarily dismissed the case.

Plaintiff filed his complaint in this Court on February 11, 2010. Plaintiff asserts claims for false arrest/false imprisonment, assault, violations of 42 U.S.C. § 1983 and § 1985, negligent hiring, retention, training, and supervision, and outrage. Plaintiff also intends to seek punitive damages at trial. In response to defendants' motion, plaintiff stated that he does not oppose the dismissal of his Section 1985 claim. Response at p. 15.

**C.    Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, the records show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 4

All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Id. at 1221.

**D.    Analysis.**

Defendants argue that plaintiff's claims for false arrest and false imprisonment are barred by the doctrine of collateral estoppel because the state court found probable cause for the arrest. Federal courts apply state law to determine the preclusive effect of state court litigation. See, e.g., Noel v. Hall, 341 F.3d 1148, 1166 (9th Cir. 2003). In Washington, the requirements of applying collateral estoppel include: (1) the issue decided in the prior adjudication must be identical to the one presented in the second, (2) the prior adjudication must have ended in a final judgment on the merits, (3) the party against whom the doctrine is asserted was a party or in privity with a party to the prior adjudication, and (4) application of the doctrine must not work an injustice. Hanson v. City of Snohomish, 121 Wn.2d 552, 562 (1993). In this case, the state court matter did not end in a final adjudication on the merits. Defendants have not cited any Washington authority establishing that a judge's determination of probable cause, in the absence of a conviction, is a final adjudication on the merits. Cf. id. at 563-64 (explaining that probable

cause was a complete defense to an action for false arrest and imprisonment; applying collateral estoppel in later civil proceeding after a criminal conviction).  Accordingly, the Court will not apply collateral estoppel.

### 1.    Federal Claims.

Having determined that collateral estoppel is inapplicable, the Court analyzes the merits of the false arrest and false imprisonment claim under both federal and state law.  Plaintiff does not dispute the existence of probable cause, which is established by the facts known to the officers at the time.  Detective Jamison investigated and obtained reasonably trustworthy information from interviewing C.D. and Ms. Shaw and reviewing the relevant documents; that information was sufficient to warrant a prudent person in believing that plaintiff assaulted C.D. See. e.g., United States v. Jensen, 425 F.3d 698, 704 (9th Cir. 2005).  Instead, plaintiff contends that Officer Miles violated plaintiff's Fourth Amendment rights by arresting him in his home without a warrant.  The Fourth Amendment ensures that "the right of the people to be secure in their . . . houses . . . shall not be violated."  Silverman v. United States, 365 U.S. 505, 511 (1961).  Based on that right, the Supreme Court has held that the police must obtain a warrant to arrest people within their homes.  Payton v. New York, 445 U.S. 573, 576 (1980).  In *United States v. Santana*, the Supreme Court established that the open doorway of a private residence is not a private place but a public one, so a person standing in the doorway has no expectation of privacy.  427 U.S. 38, 42 (1976) (noting prior precedent that police may effect a warrantless search in a public place).  In *United States v. Vaneaton*, 49 F.3d 1423, 1424 (9th Cir. 1995), the court, relying on Supreme Court precedent, upheld a warrantless arrest of an individual standing "just inside the open door of his hotel room."  In this case, according to a diagram plaintiff drew

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 6

during his deposition, he was within the swing of the open door, approximately one foot from the threshold of the doorway.  Plaintiff's Dep. at pp. 87, 93; Miller Decl., Ex. F.  The facts are materially indistinguishable from those in *Vaneaton*, and the Court upholds the warrantless arrest for the same reasons.[3]

In order to distinguish his situation from the one in *Vaneaton*, plaintiff argues that he did not know that he was opening his door to a police officer.  During plaintiff's deposition, counsel questioned him about a letter he wrote in which he stated, "But while I'm on the phone with him, a cop car pulls up and they proceed to handcuff me and take me to the station."  Plaintiff's Dep. at p. 82.  Regarding that sentence, counsel states, "[T]o me, it sounds like you saw the cop car pull up?"  Plaintiff responded, "Okay.  Then I did."  Id.; see also id. at p. 83 ("Must have, yes.")  When asked if he had any reason to dispute that characterization, plaintiff did not identify any such reason or deny seeing the police car arrive.  In fact, plaintiff's deposition answers re-affirmed his prior statement (stating, "That's a synopsis of what happened, yes.") and confirmed that he saw the police car arrive.  Id. at p. 82 (when asked, "So what did you do after you saw the police car pull up?" plaintiff responded, "Opened the door."); id. at pp. 83-84; id. at p. 83 (when asked, "So you don't have a clear recollection of which window you looked out of when you saw the cop car pull up?" plaintiff responded, "No. . . .  It wasn't important.").  The following exchange occurred:

> Q: But you knew it was a police officer knocking at your door because you had seen the

---

[3] Plaintiff relies on readily distinguishable cases in which the plaintiff was not in the doorway on the home.  United States v. Quaempts, 411 F.3d 1046, 1048 (9th Cir. 2005) (plaintiff opened the door of his trailer while lying on his bed; he was not in the threshold); LaLonde v. County of Riverside, 204 F.3d 947, 951 (9th Cir. 2000) (plaintiff was inside his apartment "and did not at any time reach the doorway").

patrol car pull up to your residence, right?

A: Apparently.

Q: Okay.  That's a yes?

A: Yes, apparently.

Id. at pp. 84-85.  Plaintiff has submitted a declaration with his response to this motion in which he states that he was "surprised" to find a police officer standing at his door when he opened it. Shope Decl. at p. 2.  In an attempt to explain the inconsistency of that professed surprise with his deposition testimony and previously written letter, plaintiff states that he was "confused" during his deposition.[4]  Id. at p. 4.  Defense counsel, however, instructed plaintiff as follows at the beginning of the deposition: "If you answer my question, the presumption is that you understood it, so it's important that you just alert me to the fact that you're confused or that you don't understand the question, if that's the case."  Plaintiff's Dep. at p. 5.  Plaintiff did not express any confusion during the deposition.

In their reply memorandum, defendants seek to strike the portion of plaintiff's declaration that contradicts his sworn deposition testimony.  A party may not avoid summary judgment by contradicting prior deposition testimony with a declaration.  See, e.g., Radobenko v. Automated Equip. Corp., 520 F.2d 540, 544 (9th Cir. 1975); Hambleton Bros. Lumber Co. v. Balkin Enters., 397 F.3d 1217 (9th Cir. 2005).  Although a deponent may later clarify his or her answers or

---

[4] Plaintiff also cites to his use of the word "apparently" and, at one point, his preface of "if that's what happened" to support his claim that he did not positively affirm seeing the police car arrive.  A review of the entirety of the relevant portion of his deposition undermines his assertion.  At most, the words plaintiff cites shows his attempt at evasiveness during his deposition, although, when specifically asked, he repeatedly confirmed seeing the police car arrive as set forth above.

resolve confusion, plaintiff's "corrections" serve neither purpose in this case.  Rather, he is attempting to alter the substance of his deposition testimony to avoid coming within the ambit of *Vaneaton*.  Therefore, defendants' request to strike is granted.  The Court also did not consider plaintiff's sur-reply, which was not a request to strike but rather further argument in violation of Local Rule 7.[5]

Plaintiff also contends that Detective Jamison violated his civil rights by directing Detective Miles to arrest him and by continuing the violation by interrogating him.  Plaintiff notes that a supervisor can be liable for condoning, ratifying, and encouraging the violation of civil rights.  Because the arrest was lawful, however, Detective Jamison did not violate plaintiff's civil rights.[6]

Finally, in addition to the fact that the claims fail substantively, plaintiff has also failed to establish that the City can be liable under the respondeat superior theory alleged.  Pursuant to Section 1983, a local government entity may not be sued based on a theory of respondeat superior absent some policy or custom, which plaintiff has neither alleged nor established. Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978).  Therefore, the defendants are entitled to summary judgment on plaintiff's federal law claims.

### 2.    State Law Claims for False Arrest, False Imprisonment, and Assault.

Plaintiff asserts state law claims against all three defendants for false arrest, false

---

[5] Oddly, with his sur-reply, plaintiff submitted a proposed order on a "Motion of the Plaintiff for an Order Striking language [sic] from the Defendant's Reply in Support of Motion for Summary Judgment" (Dkt. #43) but there is no such motion in the docket.  Nor does plaintiff request to strike language from defendant's reply in any memoranda filed with the Court.

[6] In his response to the motion, plaintiff confirmed that he is not alleging that his Fifth Amendment rights were violated.

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 9

imprisonment, and assault.  In his memorandum, plaintiff does not address the false

imprisonment claim under state law.  Nor does he cite any authority in support of such a claim or

dispute defendants' assertion that it is unavailable under state law.  In addition, probable cause,

which defendants have established, is a "complete defense" to plaintiff's claims for false arrest

and imprisonment.  Hanson v. City of Snohomish, 121 Wn.2d 552, 563 (1983).  Accordingly,

plaintiff's state law claims for false arrest and false imprisonment are untenable.

Plaintiff also asserts a state law claim for assault against Detective Miles; his argument in

support of the claim is scant.  Although he cites a case for the proposition that an assault occurs

"if unnecessary violence or excessive force is used in accomplishing the arrest," he does not

argue or cite any facts to show that Detective Miles used excessive force.  Response at p. 15.

Nor would such a claim be supported by the record.  Even according to plaintiff's version of

events, Detective Miles grabbed plaintiff by the wrist, spun him around, pushed him against the

wall and handcuffed him without inflicting any pain or injury.  Miller Decl., Ex. A at p. 3;

Plaintiff's Dep. at pp. 91-94.  Instead, it appears that plaintiff's assault claim is based on his

allegedly illegal arrest.  "An assault also occurs when there is an illegal arrest."  Guffey v.

Washington, 103 Wn.2d 144 (1984) (citing State v. Rousseau, 40 Wn.2d 92, 95 (1952) (both

cases partially overruled on other grounds)).  Notwithstanding the fact that the arrest was legal

under federal law, plaintiff notes that the Washington Supreme Court has held that, absent a

warrant or exigent circumstances, "the police are prohibited from arresting a suspect while the

suspect is standing in the doorway of his house."  State v. Holeman, 103 Wn.2d 426, 429 (1985).

However, a specific Washington statute, RCW 10.31.100(1), establishes that "[a]ny police

officer having probable cause to believe that a person has committed or is committing a

misdemeanor or gross misdemeanor, involving physical harm or threats of harm to any person or property . . . shall have the authority to arrest the person."  Therefore, the statute explicitly permits the warrantless arrest of a domestic violence suspect upon probable cause.  Plaintiff counters that the statute is inapplicable because his arrest occurred more than four hours after the alleged domestic violence incident occurred.  The provision on which plaintiff relies, however, merely provides that officers have a duty to arrest within four hours of the incident; it does not undermine officers' right to arrest on probable cause.  See, e.g., Torres v. City of Anacortes, 97 Wn. App. 64, 80 (1999) (citing RCW 10.99 *et seq.*); RCW 10.31.100(2)(c).  Pursuant to the statute, Detective Miles was authorized to effect a warrantless arrest of plaintiff, which defeats his state law claims of false arrest, false imprisonment, and assault.

Even if the arrest was unlawful despite the statute, the detectives in this case cannot be held liable if they are entitled to qualified immunity.  A Washington statute provides, "A peace officer shall not be held liable in any civil action for an arrest based on probable cause, enforcement in good faith of a court order, or any other action or omission in good faith under this chapter arising from an alleged incident of domestic violence brought by any party to the incident."  RCW 10.99.070.  The statute, rather than the common law doctrine, governs in this situation that arose out of alleged domestic violence.  See, e.g., Gurno v. Town of LaConner, 65 Wn. App. 218 (1992).  In this case, plaintiff does not dispute the existence of probable cause, and the arrest was the result of an allegation of domestic violence.  Because the statute provides the detectives with qualified immunity, plaintiff's state law claims of false imprisonment, false arrest, and assault fail.  Similarly, the detectives are entitled to qualified immunity under federal law because no constitutional violation occurred.  Pearson v. Callahan, 555 U.S. 223 (2009).

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 11

Even if it did, the qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991) (internal citation and quotation omitted).  In this case, Detective Jamison had probable cause to believe that plaintiff had committed domestic violence, and his decision to direct plaintiff's arrest was reasonable in light of the state domestic violence statute and relevant case law from the Ninth Circuit and United States Supreme Court.  Therefore, even if there was a violation of plaintiff's civil rights, the detectives are entitled to qualified immunity under both state and federal law.

### 3. Plaintiff's State Law Outrage and Negligence Claims.

As for plaintiff's claim of outrage, plaintiff has not shown that the detectives' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Grimsby v. Samson</u>, 85 Wn.2d 52, 59 (1975).  The facts in this case do not come close to meeting that standard.  Rather, the detectives were merely performing their job duties and did so in a reasonable manner under the circumstances.

Plaintiff also asserts claims against the City for negligent training, supervision, hiring, and retention.  Plaintiff relies heavily on a suit against a private employer to establish the existence of a duty, but the public duty doctrine undermines his claim.  Response at p. 16 (citing <u>Betty Y. v. Al-Hellou</u>, 98 Wn. App. 146 (1999)); <u>Osborn v. Mason County</u>, 157 Wn.2d 18, 27-28 (2006) (explaining that the public duty doctrine "reminds us that a public entity – like any other defendant – is liable for negligence only if it has a statutory or common law duty of care.").  Under the public duty doctrine, a plaintiff must show that the duty was owed to him

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 12

individually rather than "to the public in general."  See, e.g., Vergeson v. Kitsap County, 145

Wn. App. 526, 535 (2008) (quoting Babcock v. Mason County Fire Dist. No. 6, 144 Wn.2d 774,

785 (2001).  The duty of the City to hire, train, retain, and supervise its officers is owed to the

public at large, not to plaintiff individually.  Plaintiff has not identified any duty that the City

owed to him and breached, so his negligence claims fail as a matter of law.

Defendants have also moved to dismiss plaintiff's request for punitive damages, which is

moot now that all claims have been dismissed.  Even if some of the claims survived, punitive

damages are unavailable against municipalities such as the City.  See, e.g., Newport v. Facts

Concerts, 453 U.S. 257 (1981).  Although a jury may award punitive damages under Section

1983 against individual defendants if their "conduct was driven by evil motive or intent, or when

it involved a reckless or callous indifference to the constitutional rights of others," plaintiff has

not provided any evidence to support an award of punitive damages.  See, e.g., Dang v. Cross,

422 F.2d 800, 807 (9th Cir. 2005).

### III.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendants' motion for summary

judgment (Dkt. #19) and DENIES plaintiff's request for a continuance (Dkt. #31).  The Clerk of

the Court is directed to enter judgment in favor of defendants and against plaintiff.

DATED this 28th day of March, 2011.

Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT - 13